FILED & ENTERED

JUN 09 2022

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fisherl    DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>Louie Esquivel Salazar<br><br><br><br><br><br><br><br>Debtor(s). | Case No.: 1:21-bk-11467-MT<br><br>CHAPTER 7<br><br>**MEMORANDUM OF DECISION RE EVIDENTIARY HEARING ON DEBTOR'S MOTION TO AVOID LIEN UNDER § 522(f)**<br><br>Evidentiary hearing held:<br>Date:          January 27, 2022<br>Time:          10:00 a.m.<br>Courtroom:  302 |

On October 21, 2021, Debtor filed a Notice of Motion and Motion to Avoid Lien under 11

U.S.C. Section 522(f) (the "Motion") ECF doc. 11 and 13,[1] related to recorded liens held by Neil

Sunkin ("Sunkin" or "Creditor") on real property at 11134 Cayuga Ave., Pacoima, CA 91331 (the

"Property" or the "Cayuga Property"). Debtor explained that there were two recorded liens on

the Property related to Sunkin's one judgment for underlying civil case number PS013986: (1)

---

[1] Sunkin explained that the second lien recorded May 2013 as recorder no. 20210767689 reflects his renewal of judgment, with post-judgment interest included in the amount. Where the Court refers to the "Motion," it does so as to ECF doc. 13, and the $78,451.23 lien identified therein. To permit Debtor to proceed with the County Recorder's Office, Debtor will need two separate Orders, one for each recorded lien identified in ECF doc. 11 and 13, even though all parties acknowledge Sunkin obtained only one judgment against Debtor, the lien for which on the petiton date was in the amount of $78,451.23.

lien recorded on April 13, 2012, in the amount of $39,909.00, recorder's instrument number of 20120560190; and (2) lien was recorded on May 13, 2021, in the amount of $78,451.23, recorder's instrument number of 20210767689. In the Motion, Debtor argued that Creditor's $78,451.23 judgment lien impairs his homestead exemption. The assertion of value of the Property in the Motion was supported only by Debtor's declaration as the homeowner.  Id.  On November 12, 2021, Creditor filed a Notice of Opposition and Request for Hearing, and a hearing was set for December 8, 2021.  Sunkin argued that:

(1) Debtor inflated the amount of the liens that encumbered the Property;

(2) Debtor understated the value of the Property; and

(3) Debtor did not establish residency in the Cayuga Property to be eligible for a homestead; exemption therein because of a prior recorded homestead exemption on a piece of property in Victorville, CA.

Debtor filed a Reply on November 23, 2021, ECF doc. 25.  In the supporting declaration, Debtor explained that he obtained a Broker's Price Opinion (the "BPO") prior to filing bankruptcy in which the broker valued the Cayuga Property at $610,350.  Debtor Decl. ISO Reply, ¶ 6; Ex. E.

At the hearing on December 8, 2022, the Court took oral argument on the Motion. The parties ultimately winnowed the dispute down to two issues, Debtor's residency to establish eligibility for homestead and value of the Cayuga Property.  The Court continued the matter as an evidentiary hearing to January 27, 2022, allowing the parties time to obtain formal appraisals and file them with the Court.

The parties filed briefs in advance of the evidentiary hearing, on January 27, 2022, but neither party filed a formal appraisal.  See ECF doc. 36 and 38.  After the evidentiary hearing concluded, the parties filed their closing briefs, and the matter was submitted on February 7, 2022.

**Standard**

The statutory language of § 522(f) yields a four-part test for avoidance of a lien:

> (1) There must be an exemption to which the debtor "would have been entitled" under subsection (b) of § 522;
> (2) The property must be listed on the debtor's schedules and claimed as exempt;
> (3) The lien at issue must impair the claimed exemption; and
> (4) The lien must be either a judicial lien or another type of lien specified by the statute.

In re Mohring, 142 B.R. 389, 392 (Bankr.E.D.Cal.1992).

A debtor's exemption rights are determined as of the petition date. Wolfe v. Jacobson (In re Jacobson), 676 F.3d 1193, 1199 (9th Cir. 2012) ("under the so-called 'snapshot' rule, bankruptcy exemptions are fixed at the time of the bankruptcy petition."); Gose v. McGranahan (In re Gose), 308 B.R. 41, 45 note 7 (B.A.P. 9th Cir. 2004). So, Debtor's exemption rights were fixed on the day they filed the bankruptcy petition, August 31, 2021 (ECF doc. no. 1).

In the instant case, the property at issue was listed on Debtor's schedules and claimed as exempt, and Sunkin's lien is a judicial lien. Thus, the second and fourth elements of this test are met. The next inquiry is whether Debtor "would have been entitled" to the exemption under § 522(b), and whether the lien at issue impairs the claimed exemption.

The first element of the test described above is that the debtor "would have been entitled" to the exemption under § 522(b). This language requires the Court to find that the debtor is entitled to the exemption under relevant state or federal law in order to authorize the avoiding of a lien under § 522(f). Under § 522(f), the court must determine whether the debtor would have been entitled to the exemption in the absence of the lien. In re Morgan, 149 B.R. 147, 153 (B.A.P. 9th Cir. 1993). This determination is made as of the date the debtor files bankruptcy. In re Herman, 120 B.R. 127, 130 (B.A.P. 9th Cir. 1990). The state of affairs considered by the court is hypothetical, not actual. Owen v. Owen, 500 U.S. 305, 311-312, (1991). Thus, the court must essentially treat the judicial lien as non-existent until the date of the bankruptcy at which time there is a hypothetical attempt to levy on the property by the trustee. See Herman, 120 B.R. at 130.

All property owners have an automatic exemption, which does not arise absent a forced judicial sale. In re Knudsen, 80 B.R. 193, 195 (Bankr.C.D.Cal.1987). Should a forced lien sale occur, a debtor will receive his statutory homestead exemption before payment of the judgment lien "because a debtor's homestead exemption is senior in priority to a judgment lien." In re Wilson, 90 F.3d 347, 351 (9th Cir.1996); Cal.Civ.Proc.Code § 704.850. According to the automatic homestead provisions, the property cannot be sold in a forced sale unless the proceeds are used to satisfy a judgment debtor's homestead exemption before being applied to satisfy a judicial lien. See In re Pike, 243 B.R. 66, 69-70 (B.A.P. 9th Cir. BAP 1999); Cal.Civ.Proc.Code § 704.800(a).

Generally, a Debtor's claimed exemption is presumptively valid, and the objecting party has the burden of proving that the exemption is improper. In re Diaz, 547 B.R. 336 (citing Carter v. Anderson (In re Carter), 182 F.3d 1027, 1029 note 3 (9th Cir. 1999); Fed. R. Bankr. P. 4003(c)). However, where a state law exemption statute specifically allocates the burden of proof to the debtor, as California has done here, Rule 4003(c) does not change that allocation. Diaz, 547 B.R. 337.  Under California Code of Civil Procedure § 703.580(b), "[a]t a hearing under this section, the exemption claimant has the burden of proof." Thus, Debtor here has the burden to prove that they are entitled to the exemptions they claim.

**Dispute re residency for purposes of claiming a homestead exemption**

California has codified two types of homestead exemptions. The first is the automatic dwelling house exemption found in Article 4 of Chapter 4 of the California Enforcement of Judgments Law. CCP § 704.720(b) provides that "[i]f a homestead is sold under this division ... the proceeds of sale ... are exempt in the amount of the homestead exemption provided in Section 704.730."  CCP § 704.710 defines "dwelling" as a place where a person resides.

The second homestead exemption is the declared homestead exemption which is found in Article 5 of Chapter 4 of the California Enforcement of Judgments Law. CCP § 704.920 provides that "[a] dwelling in which an owner or spouse of an owner resides may be selected as a declared homestead pursuant to this article by recording a homestead declaration in the office

of the county recorder of the county where the dwelling is located." "Dwelling" as used in CCP §

704.920 is defined in CCP § 704.910(c) as "any interest in real property that is a 'dwelling' as

defined in Section 704.710." The declared homestead only protects a homeowner's equity

against subsequently recorded judicial liens, however, which can only attach to the amount of

any surplus equity over the total of (1) all prior liens and encumbrances on the declared

homestead, and (2) the homestead exemption. Cal.Civ.Proc.Code §§ 704.950(2)(c); 704.960.

See In re Pike, 243 B.R. 66, 70 (B.A.P. 9th Cir. 1999).

In the case of In re Anderson, 824 F.2d 754, 757 (9th Cir. 1987), the Court of Appeals

held that under applicable California law, the declared homestead exemption only adds benefits

to the automatic homestead exemption. A debtor must first qualify for the automatic homestead

prior to obtaining the additional benefits of the declared homestead exemption. Id. at 758–59.

The Ninth Circuit explained that one of the prerequisites to qualifying for the automatic

homestead is the "continuous residency" requirement of CCP § 704.710(c). Id.

Pursuant to California law, the factors a court should consider in determining residency

for homestead purposes are (1) physical occupancy of the property and (2) the intention with

which the property is occupied. In re Bruton, 167 BR 923, 926 (Bankr. S.D. Cal. 1994). A debtor

temporarily absent from the property on the date of the bankruptcy petition can claim a

homestead exemption in that property. In re Pham, 177 BR 914, 919 (Bankr. C.D. Cal. Dec. 7,

1994). California courts have long held that a lack of physical occupancy does not preclude a

party from establishing actual residency and claiming the homestead, if the debtor intends to

return. Diaz v. Kosmala (In re Diaz), 547 BR 329, 335 (B.A.P. 9th Cir. 2016). Physical

occupancy on the petition date is therefore neither a necessary nor sufficient condition of

residency. Whether the debtor physically occupies the property or not, however, the debtor must

have an intention to reside there. Diaz, 547 BR at 336.

Lastly, the Pham court noted that the California legislature amended CCP § 704.710(c)

in 1983 to delete the requirement of actual residency on the date the automatic homestead (the

petition date) is made. The deletion was intended to make clear that a temporary absence from

the residence for *e.g.*, vacation or hospitalization, would not destroy the characteristic of the

residence as the principal dwelling. Pham, 177 BR at 919.

Sunkin argued that Debtor presented no evidence in support of the Motion to Avoid Lien

that he resided at the Cayuga Property and was thus entitled to claim a homestead exemption.[2]

Debtor presented proof of declared homestead exemptions for the Cayuga Property and for

vacant land in the Littlerock, CA.  While Sunkin attempted to cast Debtor as untruthful by the

existence of two recorded, claimed homestead exemptions, Debtor credibly explained that he

did not understand that a homestead exemption cannot be claimed on more than one property,

and that he did not scrutinize the language of the recorded homestead on the vacant land that

attested to a dwelling thereon.  Debtor submitted photographs of the Littlerock property to show

that there is no dwelling or other structure there, demonstrating that he could not have lived

there on the petition date.

Sunkin also initially objected to the admission of Debtor's children's school enrollment

records that he provided as evidence of his residing at the Property as his homestead, attacking

the records authenticity during his cross-examination of Debtor.  At the Evidentiary Hearing, the

Court had the following colloquy with Sunkin:

> THE COURT:  Mr. Sunkin, do you have any reason to believe that this is not a record of
> the San Fernando High School? At all?
>
> SUNKIN:     Ah no, actually, Your Honor… so, I'm happy to stop this line of
> questioning…
>
> THE COURT:  I mean, this is a classic school record, and a teacher fills it in every year,
> with different handwriting, he picked it up from the school… I mean, we're
> spending all this time on authenticity when there is really no question…
>
> SUNKIN:     May I ask another question, then, on this document?

Evid. Hr'g on Motion to Avoid Lien, 12:26:26 - 12:26:49 (Jan. 27, 2022).

The debtor's testimony about where he resided was credible. It was also supported by

his daughter's school records in the local area that he picked up from the school. The records

---

[2] While Sunkin appeared to have abandoned his argument and acceded to Debtor's residency at the Cayuga
Property, the Court addresses it here, for completeness of the record.  Evid. Hr'g on Motion to Avoid Lien, 12:53:10 -
12:53:21 (Jan. 27, 2022):
> Court:   I don't think there is any question he lived there.
> Sunkin:  Your Honor, I'm not going to waste time with… I mean, I think there is a real issue as to the value.

were adequately authenticated by him and their internal indicia of a routine public record under

Fed. R. Evid. 901((b)(1), (4) & (7). Having considered the testimony and evidence in support,

the Court finds that the Cayuga Property was Debtor's residence during all relevant time periods

before and on the date of the Petition.  Debtor is entitled to an exemption as contemplated

under subsection (b) of § 522.

**Dispute re value of real property at 11134 Cayuga Ave. Pacoima, CA 91331**

Creditor initially argued that Debtor had not met his burden of proof on value by

presenting only his personal declaration as to the value of the real property.  Specifically,

Creditor attacked Debtor's use of internet appraisal websites to form his opinion.  Creditor

rested his entire case on his argument that "while a debtor may be entitled to offer an opinion on

the value of his own home, it is not to be given much credibility." Sunkin Response, 4:7-8, ECF

doc. 38. While a lay debtor's opinion of value as homeowner may not be very persuasive when

weighed against a comprehensive appraisal, "[w]here there is no other competent evidence

offered in opposition, however, even an owner's lay opinion as to value under Fed. R. Evid. 701

may carry the day." See In re Cocreham, 2013 WL 4510694, *3 -*4 (E.D. Cal. Aug. 23, 2013),

ECF doc. 40, attach. 2.

At the evidentiary hearing held on January 27, 2022, Sunkin objected to the testimony of

Sammy Gomez, a real estate broker, arguing that Debtor's witness was a "surprise" and that he

wanted another continuance for an opportunity to depose him or conduct other discovery.

Gomez was called to provide a foundation for admitting the BPO that he created related to the

Property.  Debtor offered Gomez' BPO after Sunkin objected to Debtor's declaration as the only

evidence in support of the Property value, arguing that Debtor's declaration was not admissible

or, in the alternative, was not sufficient evidence to withstand his objection.  Gomez'

appearance and testimony was not a surprise because the witness was previously disclosed in

the pleadings by Debtor. Debtor's Reply to Sunkin Opposition, 3:11-22, ECF doc. 25 (Nov. 23,

2021); Decl. of Louie Salazar ISO , ¶ 5, ECF doc. 36 (Jan. 6, 2022).  Further, at the previous

hearing held on Dec. 8, 2021, the Court discussed with the parties that a continuance was

needed to provide Sunkin an opportunity to obtain an appraisal to counter Debtor's BPO.  The

Court then set deadlines for filing supplemental briefs or appraisals, based on these

conversations. There had been months for both sides to avoid these evidentiary issues by a

simple appraisal. Sunkin's objection to the debtor and BPO testimony was overruled by the

Court as going to the weight of the evidence and not the admissibility.

As Debtor noted, Sunkin had been provided more than a month's worth of time to obtain

an appraisal of the Property to support his position. The Court was prepared to weigh Debtor's

BPO against the formal appraisal obtained by Sunkin, and rule accordingly.  Sunkin instead

chose to forgo obtaining his own evidence of value to counter Debtor's declaration, maintaining

his position that Debtor's proffered evidence of his declaration and testimony is insufficient to

meet Debtor's evidentiary burden.  Sunkin's reliance on this point is misplaced – the evidence

that Debtor relied on at the evidentiary hearing was not merely his own lay knowledge as a

homeowner.  Once Sunkin raised his objection to Debtor's Motion to Avoid Lien, arguing that

Debtor's declaration was not sufficient evidence to meet his burden, Debtor then bolstered

support for his Motion by submitting the BPO and testimony of Sammy Gomez, a real estate

agent licensed in California since 1989, with previous experience in the Pacoima area of the

San Fernando Valley where the home is located.

At the evidentiary hearing, Sunkin attacked Gomez' knowledge of the Property during

cross-examination by using what he believed about the Subject Property from his time as

Debtor's state court counsel in 2008-2009.  Sunkin is not, however, an owner of the Property

and is an attorney by trade.  No foundation has been offered that would permit Sunkin to

competently testify as to the interior details of the Property nor opine about its value.  After

having been very dismissive of Debtor's use of online appraisal websites to form his opinion,

Sunkin attempted to use similar sources to impeach both Debtor's and Gomez' testimony and

support his own theory of the value of the Property.  The exhibits consisting of internet appraisal

websites offered at the evidentiary hearing as evidence of value to rebut Gomez' testimony are

not admitted.  They are generalized abstract valuations based on algorithms with no inspection

and no cross-examination or indicia of authenticity. Thus, the only evidence as to value that

carries any evidentiary weight, even if limited, is the BPO and testimony of Gomez. Sunkin chose not to counter the BPO with a comprehensive appraisal to provide the best evidentiary support to protect his lien.

The Court notes the expense each party must have incurred to prepare for this evidentiary hearing. Such costs might have been mitigated by simply obtaining a comprehensive appraisal which, if properly authenticated, would have likely been accorded more weight than the BPO and Debtor's lay declaration.  Having considered the testimony and evidence submitted, the Court finds that the value of the Cayuga Property on the Petition Date was $693,250.  This amount takes into account Gomez' opinion of value of $610,000 from the BPO, reflecting the value sometime before the petition date, and Debtor's opinion as the homeowner that the Cayuga Property likely increased in value.  No admissible evidence was proffered to counter this finding. While internet sites may not be submitted to show value, the court did take Sunkin's cross-examination of Gomez with these values into consideration. No evidence was introduced that causes the court to believe the value is any different than $693,250.

Section 522(f)(2) provides a formula for calculating the extent to which a lien impairs an exemption: add the lien, all other liens on the property, and the "amount of the exemption that the debtor could claim if there were no liens on the property" and then subtract from that amount the value of the debtor's interest in the property in the absence of any liens. See Pike, 243 B.R. at 71.  In this case, the calculation would be as follows:

| | | |
|---|---|---|
| Lien #1 (Select Portfolio Svc) | $ | 370,889.71 |
| Lien#2 (Sunkin) | $ | 78,451.23 |
| Lien#3 (Salazar, previously avoided, ECF 20) | $ | 0 |
| Exemption Claimed | $ | 600,000.00 |
| Total of liens plus claimed exemption | $ | 1,049,340.94 |
| Minus FMV of property | $ | 693,250.00 |
| **Total amount of judicial liens that may be avoided** | **$** | **356,090.94** |

As the exemption is impaired by the amount of $356,090.94, and the Sunkin lien is less than the $356,090.94 impairment amount; the lien is avoidable in its entirety. In re Pike, 243 B.R. 66, 71 (B.A.P. 9th Cir. 1999), citing In re Hanger, 217 B.R. 592, 595 (B.A.P. 9th Cir. 1997).

**Dispute re validity & amount of Salazar lien**

Sunkin also argued that the lien held by Marciano and Guadalupe Salazar was either not a valid lien or was overstating the amount owed, noting that there was no admissible evidence to support the amount owed that was secured by the Salazar lien.  The Salazar lien was previously avoided by motion under § 522(f) and does not figure into the impairment calculation related to Sunkin's lien.  In fact, the removal of the Salazar Lien from the calculation would have inured to Sunkin's benefit by creating equity to which his lien could attach, had the exemption not been impaired even without calculating the Salazar lien.

For the reasons stated above, Debtor's Motion(s) to Avoid Lien of Judgment Creditor Sunkin (ECF doc. 11 and 13) are GRANTED. Debtor to submit Orders in accordance with this ruling within 7 days.

###

Date: June 9, 2022

_Maureen A. Tighe_
Maureen A. Tighe
United States Bankruptcy Judge